723 A.2d 970

IN THE MATTER OF ALBERT F. DALENA,
AN ATTORNEY AT LAW.

Argued January 21, 1999—Decided February 26, 1999.

*Michael J. Sweeney*, Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Justin P. Walder*, argued the cause on behalf of the respondent (*Walder, Sondak & Brogan*, attorneys).

*Joseph A. Bottitta*, President, submitted a letter in lieu of brief on behalf of *amicus curiae*, New Jersey State Bar Association.

The opinion of the Court was delivered by

COLEMAN, J.

This attorney disciplinary case concerns an allegation that respondent was involved in the unauthorized practice of law by associating with Carlo Maccallini, a foreign attorney who has not complied with the Foreign Legal Consultant Rule, *R.* 1:21–9.

Respondent was admitted to practice law in New Jersey in 1959. He practices law in Madison, New Jersey, under the firm name Dalena, Dalena and DeStefano. He has no prior disciplinary history. Our statement of the facts is taken from respondent's stipulated facts.

Dalena & Maccallini is a partnership organized under the laws of the Republic of Italy and does not maintain a *bona fide* office for the practice of law in New Jersey. Maryann T. Sagert, a resident of Illinois, contacted the American Consulate in Rome seeking an attorney fluent in English and Italian. She was referred to Maccallini in Italy whom she retained to settle the estate of her late father who was a resident of Italy. Respondent prepared and executed a retainer agreement with Sagert in New Jersey using the letterhead for Dalena & Maccallini, 181 Main

Street, P.O. Box 607, Madison, New Jersey, 07940, which is respondent's law office address.

A dispute arose between the Dalena & Maccallini firm and Sagert concerning the reasonableness of a $4,646.50 fee charged for services rendered in connection with the estate matter. That bill prompted Sagert to file a fee arbitration request against Carlo Maccallini with the Morris County District X Fee Arbitration Committee, apparently because the retainer agreement was executed in Madison, New Jersey and listed the law firm address as Madison, New Jersey.

The District X Fee Arbitration Committee upheld the entire fee sought by Dalena & Maccallini. Sagert appealed to the Disciplinary Review Board (DRB) which vacated the fee arbitration determination based on a lack of jurisdiction over one of the parties.

While the fee arbitration was pending, Sagert also filed a grievance against Maccallini with the District X Ethics Committee (DEC) on February 15, 1995. Sagert alleged in the complaint that Maccallini accomplished nothing while representing her in Italy. The DEC inquired of respondent whether Maccallini had complied with *Rule* 1:21–9, and whether Maccallini was associated with respondent in his law firm. Respondent provided the following information:

Mr. Maccallini requested my assistance in contacting Maryann Sagert and an agreement was entered with Dalena & Maccallini which was used as an intermediary and convenience by Carlo Maccallini in Rome. I practice each day as the Senior Partner of the firm above listed on this letterhead (Dalena, Dalena & DeStefano). Carlo Maccallini did not maintain an office for practice as a Foreign Legal Consultant here in New Jersey, but he used Dalena & Maccallini as a convenience for his clients for whom he was doing work in Italy. Dalena & Maccallini has *no* listed telephone number in any telephone book, or any law library, legal periodical, Martindale Hubbel or other publication. Carlo Maccallini has not held himself out as a Foreign Legal Consultant, but he has held himself out as an attorney licensed in the Republic of Italy to see clients here in the United States.

Respondent forwarded with the above written explanation a copy of a newspaper advertisement taken out by Maccallini, which typically appeared in American newspapers. Respondent explained that such advertisements

[i]ndicate that Carlo Maccallini is available for appointments for problems in Italy and is not associated with the firm of Dalena, Dalena & DeStefano. There is no mention of Dalena & Maccallini. The practice of Mr. Maccallini in coming to the United States goes back about 14 years. Customarily Mr. Maccallini comes to the United States to see clients for cases that he has in Italy. He does so twice a year and generally for three or four day periods. The total time spent in the United States seeing clients generally extends not more than 7 days over a yearly period.

Based on the recommendation of the DEC investigator, the DEC dismissed the grievance for lack of jurisdiction over Maccallini. Sagert filed a notice of appeal with the DRB, stating that, when she retained Dalena & Maccallini, she believed "that Mr. Maccallini was a part of the firm in New Jersey." According to Sagert, respondent assured her that she "would have the 'United States law' to protect her if the job wasn't being done in Italy."

On January 25, 1996, the DRB reversed the DEC's dismissal of Sagert's grievance and remanded the matter to the Office of Attorney Ethics (OAE) for further investigation. On January 26, 1996, the DRB Counsel advised the OAE that the DRB was concerned about the propriety of the business relationship between respondent and Maccallini.

By letter dated March 1, 1996, Counsel for the OAE requested respondent to provide specific information concerning the legal and financial structure of Dalena & Maccallini. On March 8, 1996, respondent informed the OAE that

[t]here are no written agreements concerning the association of Dalena & Maccallini. That relationship is an ad-hoc relationship. Dalena & Maccallini does not do business in the State of New Jersey. The office acts as a convenience for Carlo Maccallini in doing business in Italy and meeting with American clients here.

To further explain the financial arrangement between respondent and Maccallini, respondent supplied copies of bills given to Sagert. Respondent revised his March 8, 1996, response to the statement that Dalena & Maccallini is a law firm that has been in existence for approximately fourteen years and is located in Rome, Italy. He asserted that the listing of a New Jersey office on Dalena & Maccallini's letterhead meant that it is

merely a satellite office of the firm practicing in Italy. The office here in New Jersey has what is best described as an "ad-hoc" relationship with the Rome office. The New Jersey office does not constitute a *"bona fide* office" as described under

our Court Rules. It serves only the Italian law firm as a communication center for correspondence and documents and convenient assistance to American clients and others who have matters pending in Italy.

Respondent further explained that the Italian law firm of Dalena & Maccallini has clients throughout the United States and that the firm has no New Jersey practice presently or at any time. Respondent added that

> [a]lthough Dalena & Maccallini is not a law firm which has a *New Jersey practice,* it clearly constitutes a "partnership" for purposes of the practice of law within the Republic of Italy. I have not, either by means of expressed statements or by implication, misled to [sic] the public the nature of the partnership of Dalena & Maccallini. It has always been made clear to our clients that the firm does not have a New Jersey practice.... By way of further explanation, Carlo Maccallini does advertise and meet with clients on matters solely concerning the Republic of Italy. He does *not* practice New Jersey law, and any fees earned by Dalena & Maccallini have to do with foreign matters.

Respondent stated that he and Maccallini had considered certification under *Rule* 1:21-9, but had concluded that certification was inappropriate because Maccallini is not "domiciled or has a permanent presence in the State of New Jersey," he "does not intend to maintain a bona fide office in the State of New Jersey," and he has not used, and does not intend to use, the title of "foreign legal consultant."

Respondent admits that Maccallini occasionally meets with clients in the law offices of Dalena, Dalena & DeStefano, regarding matters of Italian law. Although there is no New Jersey Lawyers' Diary listing or telephone number for Dalena & Maccallini, there is a small plaque at the rear of the Dalena, Dalena & DeStefano office that reads "Dalena & Maccallini."

The OAE requested that respondent provide copies of retainer agreements between Dalena & Maccallini and New Jersey residents, identical or similar to the agreement with Sagert. Respondent certified that he has no such agreements in his possession because all retainer agreements with Dalena & Maccallini are kept in the firm's Rome office. He also certified that there are no pending matters in which Dalena & Maccallini represents New

Jersey clients pursuant to fee agreements similar to the agreement between Dalena & Maccallini and Sagert.

The OAE argued before the DRB that respondent committed the following unethical violations:

1. That he assisted Maccallini in engaging in the unauthorized practice of law, in violation of *RPC* 5.5(b), because Maccallini was not a certified Foreign Legal Consultant; and

2. That he implied that he was engaged in the practice of law in New Jersey in partnership with Maccallini, in violation of *RPC* 7.5(d), based on respondent signing the fee agreement with Sagert in New Jersey on the Dalena & Maccallini letterhead that contained his New Jersey address.

Based on its *de novo* review of the record, the DRB found that respondent engaged in the unauthorized practice of law with Maccallini in violation of *RPC* 5.5(b) and *RPC* 7.5(a), and that respondent also violated *RPC* 7.5(d), in that he used a firm name and letterhead that were misleading. The DRB explained the violations rather succinctly:

Although not cited by the OAE, *RPC* 7.5(a) is relevant. That rule states that an attorney shall not use a firm name, letterhead or other designation that violates *RPC* 7.1, which pertains to false or misleading communications. Again, one could look at respondent's letterhead and retainer agreement and find it misleading, not as to whether it is a partnership or it has a New Jersey practice, but as to whether it is a New Jersey partnership. Accordingly, the Board found a violation of *RPC* 7.5(a). For the same reason, it is clear that *RPC* 7.5(d) has been violated. In addition, by not specifically identifying Maccallini as a foreign legal consultant, as mandated by *R.* 1:21–9(e)(7), both in the letterhead and in the sign "Dalena & Maccallini," respondent assisted Maccallini in creating the impression that Maccallini was permitted to practice in New Jersey within the partnership.

The DRB concluded that respondent's unethical conduct warrants the imposition of a reprimand as the appropriate sanction.

Our independent examination of the record convinces us that some of the legal conclusions reached by the DRB are clearly and convincingly established by the record. The DRB properly rejected respondent's assertion that a foreign attorney has the discretion whether to apply for certification pursuant to *Rule* 1:21–9 when a certification is required. That rule prescribes the requirements for a certification and the practice of law in New Jersey by foreign legal consultants. In relevant part, it provides:

(a) Certification of Foreign Legal Consultants. A person who is admitted to practice in a foreign country as an attorney ... and who complies with the provisions of this rule *may* be certified by the Supreme Court as a foreign legal consultant and, in that capacity, *may render legal services within this State* to the extent permitted by this rule.

(b) Eligibility. *In its discretion the Supreme Court may certify* as a foreign legal consultant an applicant who:

(1) for a period of not less than 5 of the 7 years immediately preceding the date of application has been admitted to practice and has been in good standing as an attorney or counselor at law or the equivalent in a foreign country and has engaged either (A) in the practice of law in such country or (B) in a profession or occupation which requires as a prerequisite admission to practice and good standing as an attorney or counselor at law or the equivalent in such country;

(2) possess the good moral character customarily required for admission to the practice of law in this State; and

(3) intends to maintain, within this State, a bona fide office for practice as a foreign legal consultant.

. . .

(e) Scope of Practice. A person licensed as a foreign legal consultant under this rule may render and be compensated for the performance of legal services within the State, but specifically shall not:

. . .

(5) render professional legal advice on the laws of this State or the United States of America ... or any foreign country other than a country to the bar of which the foreign legal consultant is admitted as an attorney....

. . .

(7) use any title other than "foreign legal consultant"; provided that such persons's authorized title and firm name in the foreign country in which such person is admitted to practice as an attorney or counselor at law or the equivalent may be used, provided that the title, firm name, and the name of such foreign country are stated together with the title "foreign legal consultant" and further provided that such use does not create the impression that the foreign legal consultant holds a plenary license to practice law in this State.

[Emphasis added].

The rule requires certification by the Supreme Court, among other things, before a foreign legal consultant can practice law in New Jersey. The meaning of the word "may" in the rule could not be simpler or clearer: the Court may or may not grant the certification, in its discretion. It does not mean, as respondent contends, that the foreign attorney *may* or *may not* apply for certification, at his or her discretion, and still practice law in New Jersey. The word "may" is clearly intended to vest discretionary

authority with the Court and not the applicant. A foreign attorney *must* first apply for certification as a foreign legal consultant if he or she wishes to render legal advice in New Jersey; the Supreme Court then *may* or *may not* grant certification. After being certified, the foreign legal consultant is not authorized to render legal advice on New Jersey law, but only on the law of the foreign country in which the attorney is admitted.

Although it is clear that a foreign attorney must be certified under *Rule* 1:21–9 as a foreign legal consultant before he or she is authorized to give legal advice in New Jersey, the Court has never decided what conduct by a New Jersey attorney while assisting an uncertified, or even a certified, foreign legal consultant violates our Rules of Professional Conduct. The novelty of issues raised in this case is important because at the close of this century, unlike at its beginning, lawyers frequently are called on to participate in or give advice concerning transactions or events in other countries. For that reason, we must rethink what is meant by the practice of law in New Jersey by a foreign legal consultant and the ethical issues arising from the association of a New Jersey attorney with foreign legal consultants.

The New Jersey State Bar Association has filed an *amicus curiae* brief. It consulted with members of the International Law Section, the Unlawful Practice Committee, and the Professional Responsibility Committee, and concluded that *Rule* 1:21–9 has fostered a whole host of unanswered (or unanswerable) questions. We agree with the State Bar that the following are among the most significant issues that need clarification:

1. When does a foreign attorney need to be certified under *R.* 1:21–9?

2. In general, what restrictions should be imposed on a New Jersey attorney's relationships with foreign counsel—those who are certified and those who are not?

3. How may an attorney advertise or otherwise make known any relationship with foreign counsel?

4. May a New Jersey attorney, by public advertisement or otherwise, promote the use of foreign counsel in matters involving the practice of law in that counsel's jurisdiction?

. . .

5.   May New Jersey attorneys allow a foreign attorney to use their office to meet with clients as a convenience once a year? Twice a year? Once a month?

6.   May New Jersey attorneys use their offices to fax information from a foreign attorney's client to that foreign attorney in the foreign attorneys own country?

7.   May New Jersey attorneys advise their clients that the foreign attorney will be available for certain dates for consultation on matters pending in the foreign attorney's country?

8.   May New Jersey attorneys be reimbursed for any overhead, i.e., faxing and mailing, done as an accommodation to the foreign attorney?

9.   Do the answers to these questions depend on whether or not the foreign attorney is certified as a foreign legal consultant?

10.   What actions are permissible if the foreign attorney is certified that are not permissible if the foreign attorney is not certified?

█ Because the issues presented are of first impression and because we agree that major clarifications of *Rule* 1:21–9 are required, we have decided not to address whether respondent committed unethical conduct. *See generally In re Ravich,* 155 *N.J.* 357, 379–81, 715 *A.*2d 216 (1998), (O'Hern, J., concurring in part, dissenting in part); *In re Hinds,* 90 *N.J.* 604, 635–36, 449 *A.*2d 483 (1982). The Court will instead refer the matter to a committee to study the problems and make recommendations to the Court. Even if we were satisfied that there is clear and convincing evidence that respondent engaged in the unauthorized practice of law with an uncertified foreign legal consultant, and that respondent's letterhead is misleading, because the Court has never interpreted *Rule* 1:21–9, and because of the numerous important questions concerning its meaning, this would not be an appropriate case to impose a public reprimand. We, therefore, dismiss the complaint and refer this matter to a committee to study the issues raised.

*For dismissal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

## ORDER

The Court having concluded that the matter of the discipline of **ALBERT F. DALENA** of **MADISON,** who was admitted to the bar of this State in 1959, presents novel issues and that *Rule* 1:21–9 must be clarified, and that therefore the Court will not address whether respondent committed unethical conduct, and good cause appearing;

It is ORDERED that the complaint in DRB 97–204 is hereby dismissed.